# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT

 2                  WESTERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA,          )  99-CR-6084
 4                                       )  99-CR-6089
     vs.                                 )
 5                                       )
     DENNIS FORBES,                      )
 6                                       )  18 U.S.C. 922(g)(1)
                   Defendant.            )  21 U.S.C. 841(b)(1)(a)
 7   - - - - - - - - - - - - - - - X       846; 861(a)(1)

 8
                        Transcript of Proceeding
 9                           (Sentencing)
                  Before the Honorable Charles J. Siragusa
10                     United States District Judge

11                             Tuesday
                          15 January 2002
12                        Rochester, New York

13

14   Kathleen M. Mehltretter, Esq.
     United States Attorney
15   BY:  Frank H. Sherman, Esq.
     Assistant United States Attorney
16   6200 Federal Building
     Rochester, New York 14614
17

18
     Mehmet K. Okay, Esq.
19   P.O. Box 622
     Batavia, New York  14021-0622
20   For the Defendant

21

22
     Court Reporter:     Francis J. LeoGrande
23                       2120 United States Courthouse
                         100 State Street
24                       Rochester, New York 14614
                         (716)232-2540

25
```

```
 1                    P R O C E E D I N G S
 2                    *          *          *
 3          THE COURT:  For the record, this is the matter of
 4   United States versus Dennis Forbes.
 5          You are Dennis Forbes?
 6          THE DEFENDANT:  Yes.
 7          THE COURT:  Mr. Forbes, you're appearing with your
 8   attorney, Mr. Okay; is that correct?
 9          THE DEFENDANT:  Yes.
10          MR. OKAY:  Good afternoon, your Honor.
11          THE COURT:  Good afternoon.
12          The Court notes the presence of Mr. Sherman on
13   behalf of the government.
14          Mr. Forbes, this matter is on for sentencing.  In
15   that regard I have received and reviewed the Presentence
16   Investigation Report prepared by the United States
17   Department of Probation, initially on July 24th, 2001, and
18   then revised on November 30th, 2001, and finally on December
19   21st, 2001.
20          I've also read carefully Mr. Okay's objections to
21   the presentence report dated December 27th, 2001, and the
22   government's statement with respect to sentencing factors,
23   and a response to your objections to the PSR, which was
24   dated January 9th, 2002.
25          Mr. Sherman, have you received and reviewed the
```

1    Presentence Investigation Report?

2            MR. SHERMAN:  Yes, your Honor.

3            THE COURT:  Mr. Okay, have you received and reviewed

4    it as well?

5            MR. OKAY:  Yes, your Honor.

6            THE COURT:  Have you had occasion to go over the

7    presentence report with Mr. Forbes?

8            MR. OKAY:  Yes, I have.  On several occasions we

9    have gone over it in detail, your Honor.

10           THE COURT:  Mr. Forbes, have you read the report

11   yourself?

12           THE DEFENDANT:  Yes.

13           THE COURT:  I do note that you have made five

14   objections to the Presentence Investigation Report.  Before

15   proceeding any further I will address them in the order they

16   were listed in your objections to the Presentence

17   Investigation Report.

18           At the outset the Court does note in resolving these

19   objections it is, of course, well settled to rule against

20   the defendant the government must generally establish the

21   disputed allegations in the presentence report by a

22   preponderance of the evidence, United States versus Lee,

23   818 F.2d 1052 at page 1057, a 1987 Second Circuit case,

24   cert. denied 484 U.S. 956, a 1987 case.

25           Further, it has long been established that hearsay

1    evidence is admissible at a sentencing hearing,

2    United States versus Weinberg, 852 F.2d 681 at 685, a 1988

3    Second Circuit case.

4          More specifically, the Court may, in reaching its

5    decision, rely on hearsay statements contained in a

6    Presentence Investigation Report as well as other hearsay,

7    as long as such hearsay has adequate indicia of reliability;

8    United States versus Carmona, 863 F.2d 569, at 564, a 1989

9    Second Circuit case.

10         First, Mr. Forbes, you object to paragraph 26 of the

11   Presentence Investigation Report which characterized Brett

12   Harrington as a victim in what is called the overall conduct

13   of the offense.  You list several reasons:  Because this was

14   not a homicide; no homicide issue of fact is presented in

15   the evidence or to the jury; that there is no mention of the

16   death of Brett Harrington in the PSR; and while the senior

17   probation officer refers to Brett Harrington as a victim in

18   the overall conduct of the offense, Winston Banner, who has

19   been accused of another homicide and who was the alleged

20   victim in Count 3 of the superseding indictment, is nowhere

21   in the PSR described as a victim of Dennis Forbes.

22         As to this objection, the Court determines that

23   pursuant to Federal Rule of Criminal Procedure 32(c)(1), no

24   finding is necessary because the controverted matter will

25   not be taken into account in, or will not affect, your

1    sentencing in any way.

2            Turning to your next objection, you object to

3    paragraph 30 of the Presentence Investigation Report, which

4    calculates your base offense level at 38 and lists a number

5    of reasons, which I will go through now.

6            First, you contend the facts indicate the jury

7    verdict form detailed, as to Count 1 of the second

8    superseding indictment, that you were linked to more than 50

9    grams of cocaine base.

10           Next, you say that the senior probation officer

11   alleges in conclusory fashion, based upon the flawed

12   analysis of the statements of Kevin Pierre and Winston

13   Banner, which were not part of the evidence before the trial

14   jury, that Dennis Forbes can be linked to the possession and

15   movement of 1.5 kilograms or more of cocaine base in this

16   District.

17           Next, you indicate the senior probation officer's

18   methodology is improper because it presupposes that on every

19   single day during the period described in the indictment the

20   same quantity of drugs were sold, and such a 100-percent

21   efficiency rating is improbable in the realm of reality.

22           Next, you indicate no evidence of the movement of

23   kilogram quantities of cocaine base by Dennis Forbes was

24   presented to the trial jury, and there is absolutely nothing

25   in the jury form to indicate other than a link to more than

1    50 grams of cocaine base.

2        Next, you say the Supreme Court recent opinion in

3    Apprendi versus New Jersey, and versus United States, 120

4    S.Ct. 2348, 2000, holds that any fact that increases the

5    maximum penalty for a crime must be charged in the

6    indictment, submitted to a jury, and proven beyond a

7    reasonable doubt.

8        Next, you argue the conclusions of the senior

9    probation officer in paragraph 30 are not conclusions of the

10   trial jury based upon the evidence at trial, and it is the

11   position of the defense that the base offense level should

12   be 32.

13       The Court disagrees with your position, Mr. Forbes,

14   and agrees with the presentence report and finds by a

15   preponderance of evidence that, pursuant to United States

16   Sentencing Guidelines Section 2D1.1(c)(1), a base level of

17   38 is appropriate.

18       In that regard, the Court specifically credits as

19   reliable Kevin Pierre's statements to the police that he

20   sold at least $500 worth of cocaine base a day for you for

21   two years.  The Court further finds that based upon the

22   experience of law enforcement officials cocaine is generally

23   sold in $10 bags weighing approximately one gram each;

24   therefore, Pierre sold 3.5 kilograms, or 3,500 grams during

25   the period encompassed in the Count 1 conspiracy for which

1    you stand convicted.

2            MR. SHERMAN:  Your Honor, I'm sorry.  I think you

3    said "one gram each," and I think the finding in the PSR was

4    one-tenth of a gram --

5            THE COURT:  I thought I said one-tenth of a gram.

6    The Court's notes do indicate one-tenth of a gram each.

7            Therefore, Pierre sold about 1.5 kilograms, or 3,500

8    grams, in the period encompassed in Count 1 in the

9    conspiracy, for which, Mr. Forbes, you stand convicted.

10   This is obviously more than the 1.5 kilogram minimum

11   required for a base level of 38.

12           Moreover, the Court finds, specifically based upon

13   the trial testimony, that the conduct of Pierre was

14   certainly within the scope of the conspiracy for which you

15   were convicted.  Additionally, the Court finds that you were

16   the leader/organizer of the Count 1 conspiracy; and

17   therefore, Pierre's conduct was foreseeable to you.  See

18   United States versus Hernandez-Santiago, 92 F.3d 97, page

19   1000, a 1996 Second Circuit case.

20           The Court makes all its findings by a preponderance

21   of evidence.

22           Your reliance on Apprendi is misplaced since your

23   statutory maximum of life is not being increased by the

24   Court's sentencing determination as to drug quantity.

25   Rather, the jury found beyond a reasonable doubt that you

1    conspired to possess with intent to distribute and to

2    distribute 50 grams or more of cocaine base, which

3    establishes the maximum sentence at life.  Therefore, the

4    preponderance of evidence standard properly applies to the

5    Court's determination of a base level of 38.

6         Third, you object to the upward adjustment in

7    paragraph 31 for specific offender characteristics pursuant

8    to United States Sentencing Guideline 2D1.1(b)(1), which you

9    indicate such section is nowhere to be found in the

10   guideline.

11        You claim the facts indicate the conspiracy was

12   alleged to have existed in this District between July of

13   1998 and July of 1999.

14        You say the facts indicate that Dennis Forbes was

15   found to be in possession of a firearm at the time of the

16   automobile stop on August 11th, 1999, after the conspiracy

17   had ended.

18        You argue the defense notes that there is no proof

19   that Dennis Forbes was found to be in possession of a

20   firearm at the time of the automobile stop on August 11th,

21   1999, after the conspiracy had ended.

22        You say the trial jury was unable to reach a verdict

23   as to Count 2; and therefore, the two-level enhancement

24   cannot be applied to increase the maximum penalty, citing

25   Apprendi.

1     You argue the defense notes, en passant, that the

2  senior probation officer on page 5, paragraph 9, makes

3  reference to indictment 99-CR-6084 and alleges that Dennis

4  Forbes possessed a handgun as a felon on September 9th,

5  1999, when in fact the automobile stop which gave rise to

6  the charges occurred on August 11th, 1999.

7     Finally, you argue that the felon in possession

8  conviction by plea cannot be used to support the two-level

9  enhancement because the date of August 11th, 1999, falls

10 outside the time frame of the charged conspiracy.

11     However, the Court finds by a preponderance of

12 evidence that the enhancement applies.

13     At the outset, the Court notes despite the failure

14 of the jury to a verdict on Count 2 of the second

15 superseding indictment, the _Apprendi_ rule will not be

16 implemented in the Court's finding as to possession of a

17 dangerous weapon since this finding will not result in a

18 sentence on a single count above the statutory maximum for

19 that count; _United States versus Breen_, 243 F.3d 591 at page

20 598 through 599.  _Breen_ is a 2001 Second Circuit case.

21     In this regard, the Court bases its determination of

22 the appropriateness of the two-level increase upon the

23 evidence that was presented at trial, including your own

24 statements, as well as other reliable hearsay before the

25 Court.

1    For example, you admitted in your statements given

2  on August 11th, 1999, that you had been in possession of a

3  gun during the period of the conspiracy.  In addition,

4  weapons were twice found by the police at 82 Eddy Street,

5  one of the drug houses that you ran during the time of the

6  conspiracy.

7    On one occasion, July of 1998, police found a

8  shotgun there while investigating an illegal cable

9  television connection matter.  The second time was on

10  September 29th of 1998 when the police arrested co-defendant

11  Damon Shallow at that location; they found in the residence

12  a .22 caliber long rifle as well as a loaded .22 caliber

13  semi-automatic pistol and a .22 caliber revolver that was

14  loaded.

15    At sentencing in this matter Shallow did acknowledge

16  that he was selling drugs for you out of 82 Eddy Street at

17  the time of his arrest, and did so indicate under oath.

18    So as indicated, the Court finds by a preponderance

19  of evidence that the enhancement applies.

20    Fourth, you object to paragraph 33 of the

21  Presentence Investigation Report because the senior

22  probation officer's unsupported conclusions, once again,

23  accuse Dennis Forbes of being an organizer of more than

24  five.

25    The reasons you list are Dennis Forbes is accused

1    along with two others; Winston Banner does not say anything

2    about working for Dennis Forbes between July of 1998 and

3    July of 1999; Kevin Pierre said that he hustled for Dennis

4    Forbes and that a kid named Bugs worked at York, too;

5    assuming that Bugs is Winston Banner, that a paucity of

6    evidence that Dennis Forbes was the an organizer of more

7    than five.

8         The senior probation officer mentions Damon Shallow,

9    Kevin Pierre, Winston Banner, Terrance Melford, and Jamal

10   McGregor as all working for Dennis Forbes.  That is five

11   people.  Not more than five people is required by the

12   statute.

13        There's no evidence in the trial record to support

14   the senior probation officer's contention that Dennis Forbes

15   was an organizer as opposed to a manager as defined in the

16   guidelines; and finally, you say, accordingly the Court is

17   inclined to conclude that Dennis Forbes was an organizer and

18   manager, then the two-point enhancement should be utilized.

19        Again, the Court disagrees with your position and

20   finds by a preponderance of evidence introduced at trial

21   that you, pursuant to Guidelines Section 3B1.1(a), were an

22   organizer or leader of criminal activity that involved five

23   or more participants or was otherwise extensive.

24        The Court finds based upon the proof at trial by a

25   preponderance of evidence, that you were the organizer of

1  the drug conspiracy or leader for which you were convicted

2  and that it involved at least you, Winston Banner, Kevin

3  Pierre, Terrance Melford, Jamal McGregor, and Damon Shallow.

4  Finally, you object to paragraph 48 of the

5  presentence report stating that you obstructed justice

6  simply because you moved to withdraw your guilty plea under

7  indictment 99-CR-6084.

8  I should note this ruling is not going to impact on

9  anything since it relates to the possession of a weapon by a

10  felon, and as the presentence report accurately states, the

11  guideline determination on the conviction on the first

12  indictment controls.  The Court will nonetheless rule on it.

13  Your specific objection goes to the following:  The

14  senior probation officer states, "The defendant pled guilty

15  under oath and later under oath presented information to the

16  Court in order to withdraw his guilty plea.  That means on

17  one of these occasions he lied to the Court and committed

18  perjury."

19  You indicated one of the primary issues in a guilty

20  plea is whether the plea is knowing, voluntary, and

21  intelligent.

22  One of the primary issues of perjury is always

23  materiality.

24  You go on to say the senior probation officer does

25  not mention materiality in paragraph 48 or whether any of

1    the lies supposedly told to the Court in any way related to

2    any of the elements of the felon-in-possession charge.

3         And finally, for the foregoing reason the two-level

4    enhancement should not be applied.

5         Despite the defense contentions, the Court finds by

6    clear and convincing evidence that the enhancement applies.

7         Section 3C1.1 provides for this enhancement where a

8    defendant willfully obstructs or impedes or attempts to

9    obstruct or impede the administration of justice during the

10   investigation, prosecution, or sentencing of the instant

11   offense of conviction.  This Circuit in United States versus

12   Ben-Shimon, 249 F.3d 98, page 102 to 103, a 2001 Second

13   Circuit case, relying on the United States Supreme Court

14   decision in United States versus Dunnigan, 507 U.S. 87 at

15   page 95, a 1993 Supreme Court case, held that if a defendant

16   objects to a sentence enhancement for perjury, a district

17   court must review the evidence and make independent findings

18   necessary to establish a willful impediment to or

19   obstruction of justice or an attempt to do the same under

20   the perjury definition set out in Dunnigan.

21        The definition relates to the federal perjury

22   statute and is as follows:  "A witness testifying under oath

23   or affirmation violates the federal criminal perjury statute

24   if he or she gives false testimony concerning a material

25   matter with the willful intent to provide false testimony,

1    rather as a result of confusion, mistake, or faulty memory."

2    Moreover, the Circuit in Ben-Shimon, advised that in

3    determining whether an enhancement for obstruction of

4    justice is required, it is sufficient if the district court

5    makes a finding of an obstruction of, or the impediment to,

6    justice that encompasses all of the factual predicates for a

7    finding of perjury, but that it is preferable for a District

8    Court to address each element of the alleged perjury in

9    separate and finding.

10   Therefore, in this Circuit, as Ben-Shimon makes

11   clear, enhancement for obstruction of justice based on

12   perjury may be imposed only where the sentencing court finds

13   that the defendant willfully and materially committed

14   perjury, which is the intentional giving of false testimony

15   as to a material matter; United States versus Zaqari, 111

16   F.3d, 307 at 329, a 1997 Second Circuit case.

17   That is to say, perjury is committed "willfully"

18   where it is made for the specific purpose of obstructing

19   justice, and "materially" where it is material to the

20   proceeding in which it is given.

21   Moreover, it is well settle that obstruction of

22   justice findings relating to perjury must be made by clear

23   and convincing evidence, United States v. Kelley, 142 F.3d,

24   172 at 178, a 1998 Second Circuit case.

25   Applying these principles of law to this case, the

1   Court does find by clear and convincing evidence that you

2   perjured yourself, and that the two-point upward adjustment

3   applies.

4          In reaching its decision the Court relies on the

5   following:  The plea allocution on January 24th, 2001, in

6   which you told me that you wanted to plead guilty.  You were

7   placed under oath at that time.  You acknowledged that you

8   had discussed pleading guilty with your then lawyer, Mr.

9   Schiano.  You indicated to me that you believed it was in

10  your best interest to plea guilty to the charge.  You stated

11  that you had enough time to consult with your lawyer and

12  that you were satisfied with Mr. Schiano's advice and

13  representation.  You said that your decision to plead guilty

14  was based in part upon the government's representation that

15  it would dismiss the charge upon which the jury hung at

16  trial; that is, the possession of a weapon in furtherance of

17  drug trafficking.

18         You told me that you didn't have any questions, and

19  you indicated to me that you answered my questions

20  truthfully.  I further asked you, and you acknowledged, that

21  you were not threatened and that other than the promises

22  discussed no promises had been made to you to plead guilty;

23  that is, other than the indication that the government would

24  dismiss the charge upon which the jury was hung.

25         The process of ultimately withdrawing your plea was

1   a long one.  I advised you repeatedly of the down side of

2   withdrawing your plea.  I advised you if you submitted a

3   statement to me which contradicted the testimony that you

4   gave under oath, that it could result in an enhancement for

5   obstruction of justice.

6          I discussed with you the wisdom of proceeding.  I

7   assigned you new counsel who told you the same thing; and

8   ultimately when you persisted I cautioned you that a lawyer

9   could not ethically bring your motion if he thought there

10  was no good-faith basis to do so.  That, of course, resulted

11  in my relieving the lawyer who I appointed, Mr. Wicks, and

12  allowing you to proceed pro se to bring the motion.

13  However, this record is replete with warnings given to you

14  by the Court that you would be subjecting yourself to this

15  potential enhancement if you persisted and submitted a

16  statement contrary to your sworn testimony when you pled

17  guilty.

18         So the Court finds by clear and convincing evidence

19  that you willfully committed perjury when you indicated to

20  the Court that your plea was essentially coerced by Mr.

21  Schiano.  You did it with a specific purpose of obstructing

22  justice; that is, it was certainly material to the

23  proceeding, and it was clearly intentional on your part.

24         As I said, you were questioned very carefully, and

25  to the extent that you now allege that the plea was coerced,

1    that you didn't know what you were doing, that it wasn't

2    voluntarily, that makes the sworn testimony that you gave at

3    your allocution perjurious.  The Court finds that by clear

4    and convincing evidence; and therefore, this enhancement is

5    appropriate based upon the Court's determination that -- at

6    least according to your latest statement -- it means you

7    perjured yourself when you took the plea under oath at the

8    time you were represented by Mr. Schiano.

9            However, as I indicated in the last analysis, it's

10   not going to make any difference.

11           I do note, however, that you filed your motion --

12   finally filed it -- on September 26th, 2001, and you claimed

13   in your papers that you entered into a plea which was

14   neither knowing, intelligent, nor voluntarily which resulted

15   from confusion about what you were plead guilty, due to your

16   lawyer advising you that you would be pleading guilty to

17   Count 2 of Indictment 99-CR-6089 and not to Indictment

18   99-CR-6084, which makes absolutely no sense because then you

19   would be pleading guilty to the possession-in-furtherance

20   crime, which the jury hung on, which would mean you would

21   have to get a minimum of -- I think in your case -- 10 more

22   years in jail.  It makes no sense.

23           As I said, your withdrawal affidavit directly

24   contradicts what you said under oath at your plea and also

25   contradicts -- strike that, your withdrawal plea contradicts

1   what you said to this Court under oath; so accepting this

2   contradiction, it means that clearly at some point you're

3   not being truthful to this Court.

4        I did make specific findings when I declined to

5   withdraw the motion, that they were inherently incredible.

6        I mean, you told me -- I'm trying to recollect, but

7   because of the contradictory nature of the statements you

8   did indicate to me that you didn't tell the truth when you

9   entered your guilty plea.  I think that was your statement

10  to me in the court as I recall.  So there can be little

11  question in the Court's mind that this enhancement applies.

12       However, as I repeat for the third time, it really

13  doesn't make any difference since it's not going to impact

14  in any way on your sentencing.

15       Mr. Sherman, does the government move for sentence?

16       MR. SHERMAN:  Yes, your Honor.

17       THE COURT:  Do you have anything to say?

18       MR. SHERMAN:  Only, your Honor, that obviously the

19  guideline calculation you just affirmed subjects Mr. Forbes

20  to the ultimate sentence that this Court can give, which is

21  life imprisonment; and to the extent anybody viewing this

22  record would think that sentence was somehow inappropriate,

23  I just want the record to reflect, as the Court is well

24  aware, through a number of different indictments that have

25  been before this Court it's been established that Mr. Forbes

1   was not only the organizer of the five other people that the

2   Court mentioned, but interacted with at least 10 or 15 other

3   people who have been before this Court either in the status

4   of a defendant or a witness.

5        It's also clear from his conviction on Count 3 that

6   Mr. Forbes had a very negative impact on a number of young

7   people, including Winston Banner.  The evidence has been

8   clear through all these prosecutions that Mr. Forbes was

9   responsible for recruiting teenagers to come up to Rochester

10  from New York City to sell drugs; and certainly, to that

11  extent he's responsible for not only ruining those people's

12  lives in terms of subjecting them to prosecution, but

13  ultimately that in the course of the time period of this

14  conspiracy we are aware that at least two people have been

15  hurt.

16       It's entirely appropriate in the government's view

17  that in light of the fact that Mr. Forbes has never accepted

18  responsibility for any of his actions he does in fact

19  receive a life sentence.

20       THE COURT:  Thank you, Mr. Sherman.

21       Mr. Okay, do you wish to say anything on behalf of

22  Mr. Forbes before the Court passes sentence?

23       MR. OKAY:  Your Honor, I would just point out, as my

24  colleague for the government has indicated, Mr. Forbes,

25  based on the finding that this Court has made and the

1  findings that the Court made at the time of the denial of

2  the application to withdraw his guilty plea, he faces the

3  ultimate sentence under the guidelines, life imprisonment.

4  He's at level 45 in the criminal history category of III.

5  There's not much room to maneuver there.

6          Your Honor, I didn't try this case and I wasn't

7  present at the time of the guilty plea or the time that the

8  application to withdraw was before the Court, so I don't

9  really have much to say.  I haven't even seen the trial

10  transcript.

11         I was having a conversation before you came out here

12  with Mr. Lyons, and I was talking to him about the

13  sentencing guidelines; and I always go back in these federal

14  cases, in a case under guidelines, I always go back to the

15  language of the commission.  One thing that strikes me now,

16  as I recall, is the commission's view that each defendant

17  who comes before the Court for sentencing presents a unique

18  study in the human failings that either mitigate nor magnify

19  the crime and punishment to ensue.

20         I know the Court can appreciate that, but, your

21  Honor, my hands are tied.  The Court has made its findings.

22  We are bound to respect those findings.  We are at level 45

23  with a criminal history category of III.  I don't know what

24  else to say.  We made our objections.  The Court has made

25  his findings.

1          I do know Mr. Forbes would like to make a statement

2     to the Court, if the Court will permit it.

3          THE COURT:  Certainly.  First of all, though, I want

4     to thank you, Mr. Okay, for taking the assignment, and I

5     know you'll be handling the appeal; and thank you for the

6     fine job you've done in the representation of Mr. Forbes at

7     the time of sentencing.  The Court certainly recognizes the

8     time and effort you put into the case so far and appreciates

9     what I know will be the continued effort you will put in for

10    Mr. Forbes' appeal.  I just wanted to take the time to give

11    you the Court's appreciation for what you've done.

12         Mr. Forbes, the law does permit you to make a

13    statement to me before I pass sentence, so go ahead.

14         THE DEFENDANT:  I'm about to read.  It might take

15    some time, so...

16         THE COURT:  Go ahead, Mr. Forbes.

17         THE DEFENDANT:  December 22nd, 1998, Dennis Forbes

18    was in the hospital with a bullet wound that went through

19    his hip and lodged in the waist.  Officer Tom Janus said

20    that Dennis Forbes made a statement admitting a homicide.

21    Dennis Forbes retained lawyer Tom Cuzzi and told him what

22    took place with him and the Officer while he was in

23    Intensive Care unit.  Tom Cuzzi told Dennis Forbes that the

24    Officer violated his rights by asking him questions when

25    you're in that kind of condition.

1    Dennis Forbes' lawyer got on the phone and called

2 Tom Janus and told him that he was Dennis Forbes' lawyer and

3 not to have any contact with his client unless he's notified

4 in advance.

5    During the same time, Tom Janus notified INS that

6 Dennis Forbes was shot and that he was in the hospital, and

7 the INS did nothing.

8    On July 11, 1999, Curtis Crawley was shot and

9 killed.  His cousin made two statements to Tom Janus.  One

10 is that he did not recognize who shot his cousin.  Two days

11 later Tom Janus again questioned the witness who then

12 changed his mind and told Janus that he recognized who it

13 was.

14    On August 2nd, 1999, Dennis Forbes' home was under

15 police surveillance.  Dennis Forbes pulled in the parking

16 lot and parked and him and Conroy Porchman stepped out of

17 the car and went to Dennis Forbes' house in Grecian Gardens,

18 Greece, New York.  They stayed in the house until Dennis

19 Forbes took a shower and changed.

20    When they left there, RPD followed their car.  After

21 following for a few miles they were pulled over by Rochester

22 Police Department officers.  They were ordered out of the

23 car at gunpoint.  The first person to exit the vehicle was

24 the passenger, Conroy Porchman.  Dennis Forbes, who was the

25 driver, was also ordered to step out of the vehicle while

1  looking into the muzzle of a shotgun.  The officer yelled,

2  "Keep your hands up and use one hand to open the door.  Get

3  out and lay on the ground."  While being on the ground

4  Dennis Forbes was searched and a gun was found on his person

5  in his left front pocket.

6      Dennis Forbes was taken to the interrogation room

7  and handcuffed to the table.  Dennis Forbes asked if he

8  could make a call to speak to his lawyer, Tom Cuzzi.  The

9  officer said no and left the room.

10     Dennis Forbes fell asleep for a few moments and was

11  awakened by an officer who was typewriting while Officer

12  Janus is asking questions about Conroy Porchman and Kevin

13  Pierre.  Officer Janus told Dennis Forbes that there was a

14  shoot-out between Curtis Crawley and Conroy Porchman on July

15  4th.  Where were you.  Dennis Forbes told the Officer he was

16  in New York City to Christmas with a newborn daughter.

17  Dennis Forbes told the Officer he heard about it because a

18  lady told him about it, and he have a videotape to prove

19  where he was that day.

20     The Officer then said you hear -- the Officer then

21  said did you hear that Curtis was killed the other day?  Did

22  you hear about it?  Dennis Forbes says yes.  The Officer

23  said how did you know?  A friend in the neighborhood told

24  me, plus it was on the news.

25     Janus said people said they seen your car in the

1    neighborhood with Kevin and Conroy the day he was killed.

2    Dennis Forbes told the Officer he gave them a ride to the

3    store the other day.   They -- meaning Kevin and Conroy --

4    was walking on Silver and Eddy Street.   That stopped Dennis

5    Forbes' car and asked if he could give them a ride to the

6    store to buy beer and blunt.   He dropped them at the store

7    and bought a beer for himself, left them at the store and

8    went to his brother's store at "Shylock".   He was there for

9    about 20 minutes and left.

10         The Officer asked where did you drive -- where did

11    you drive?   The officer asked where did you drive?   Dennis

12    Forbes said "Shylock" and turned down Appleton.   Dennis

13    Forbes saw Kevin and Conroy walking down Appleton Street.

14    They asked Dennis Forbes to give them a ride.   The Officer

15    asked where did you drop them off.   I told them Eddy and

16    Silver Street.   The Officer asked what were they wearing?

17    Dennis Forbes told the officers what they were wearing.

18    They asked -- the Officer asked did they look nervous.   I

19    said no.

20         "Did you see a bulge?"

21         I said no.

22         "Were they speeding?"   I said no.

23         "Did you see a gun?"   I said no.

24         "Did they tell you they shot someone?"   Dennis

25    Forbes looked at the Officer and said, "If you shot someone

1    would you tell anyone?"

2          Then he -- then the Officer got upset and said,

3    "Just tell us that Kevin and Conroy killed Curtis and we

4    will forget about the gun you got arrested with."  Dennis

5    Forbes told the Officer he was not there and he did not

6    know.  They insisted that I tell them.

7          Then finally Officer Janus said, "You don't want to

8    work with us.  You don't want to work with us.  You will

9    f'ing see."  He exited the room and two other men entered

10    the room and introduced themselves.  "We are Immigration

11    Officers Garcia and Waugaman, but sign this paper so you

12    know who we are."

13          Dennis Forbes signed.  They said tell the officers

14    what they want to know and you wouldn't have to worry about

15    us.  Dennis Forbes responded, "I'm not going to lie on

16    people because I was not there."

17          Then they said, "Tell us what happened when you were

18    stopped in your car."  I did.  They exited the room.  Dennis

19    Forbes looked out the window.  It was dark outside.  The

20    door opened.  Dennis Forbes was escorted to a phone.  He

21    tried to call his lawyer, but there was no answer.  He then

22    called his wife and asked her the time.  She said it was

23    after 7 p.m.

24          Then he told his wife he was arrested.  She said

25    "When?"  I said, "After I left the house."  She said she

1   went to the store, and when she entered the house the door

2   was off the hinges and the police were in the house.   Dennis

3   Forbes hangs up the phone and was taken by INS to Batavia.

4        In September of '99 I was indicted on conspiracy

5   charges along with Kevin Pierre and Conroy Porchman.   The

6   indictment was superseded along with Dennis Forbes, Kevin

7   Pierre and Damon Shallow.   The case agent was Tom Janus.

8   Tom Brennan was a narcotics investigator.

9        At the suppression hearing Officer Janus testified

10  that the stop of my vehicle and the search of my person was

11  justified because I was with Conroy Porchman who they wanted

12  to question about a homicide.   Nothing indicated that I knew

13  anything about what Conroy Porchman knew, what I was asked

14  about.   Also, at the time there was no warrant mentioned

15  about Dennis Forbes for him at the stop.   The Officers

16  justified the search of my person by saying they have to

17  secure themselves.

18       The crime that Mr. Pierre was later convicted on

19  happened one month, which is 7/8/99, prior to the stop of

20  August 11th, 1999.

21       After not being arraigned until two months on the

22  arrested charges the officer testified that I had an INS

23  warrant.   At the suppression hearing Agent Garcia testified

24  that he received a phone call from Officer Tom Janus if he

25  could come and talk to Dennis Forbes.   Nothing was mentioned

1    about an INS warrant.  There was no indication during the

2    conversation of the mention of an INS warrant now dated

3    August 9th of 1999, but on August 11th, 1999, when I was

4    arrested, there was no INS officer present when I was

5    stopped and taken out of my vehicle.

6         Agents Garcia's purpose was to come and talk to me

7    about cooperating with the police officers, so there should

8    have been no intervening period between my arraignment and

9    arrest.

10        On October 5th, 2001, the Judge, U.S. Attorney,

11   and -- and the U.S. Attorney turned down my motion to

12   withdraw my plea.  One of the reasons for denial of

13   withdrawal of plea was due to the fact that since I had an

14   INS charge they were justified in not arraigning me within a

15   normal 72-hour period, even though my arraignment was not

16   until two months after I was initially arrested on August

17   11th, 1999.

18        Under INS regulation directive of August 7th, 1969,

19   only designated INS officers are authorized to make an

20   arrest and the list of designated immigration officers is

21   set forth in 8 CSR, Section 2875(c)(1)-(5), and the arrest

22   can be made only when immigration officers have reason to

23   believe that the person to be arrested has committed an

24   offense going against the United States or is an alien who

25   is in the United States illegally.  Whenever possible a

1   warrant must be obtained prior to the arrest.

2          At the time of the arrest the designated immigration

3   officer must, as soon as practicable and safe to do so,

4   identify himself or herself as an immigration officer

5   authorized to execute a warrant and state that the person is

6   under arrest and the reason for the arrest.

7          With respect to an alien arrest and administrative

8   charge of being in the United States in violation of the

9   law, the arresting officer must adhere to the procedure set

10  forth in 8 CFR, Section 273.  If the arrest is made without

11  a warrant and the procedure set forth, Section 242(c)(2) --

12  8 CFR.  If the arrest is made with a warrant, with respect

13  to a person arrested and charged in violation of the law of

14  the United States, the arresting officer must advise the

15  person of the appropriate rights as required by law.

16         At the time of the arrest or as soon thereafter as

17  practicable it is the duty of the immigration officer to

18  ensure the warning is given in a language the arrestee

19  understands and that the arrestee acknowledges that the

20  warnings are understood.  The fact a person has been advised

21  of his or her rights must be identified on the arrest form

22  and made part of the arrest.

23         THE COURT:  Mr. Forbes, I want to let you say

24  whatever you want to say, but we're not going on with you

25  reading a statute to me.  If there's something you want to

1    say about sentencing I want to give you every opportunity,

2    and throughout the proceeding I've tried to be patient with

3    you.  As I've told you on previous occasions, I've spent

4    more time with you than any other defendant.

5           I don't know what you're reading from, but you're

6    not here to read the law.  If you want to say something to

7    me pertinent to your sentencing, go ahead.

8           In fact, I'll even let you continue if you're going

9    to wrap it up.

10          THE DEFENDANT:  Yes, I'm going to wrap it up.

11          THE COURT:  Go ahead.

12          THE DEFENDANT:  I was detained illegally and my due

13   process rights violated by INS Officers Garcia and Waugaman.

14   Upon my arrest RPD took me into custody.  RPD never

15   arraigned me and took me and turned me over to INS who put

16   me the custody of you.  The marshals never took me to be

17   arraigned during the time I was arrested.  At the time of my

18   interview with Garcia and Waugaman, the only thing said to

19   me by the agents were, "We are INS agents.  Please sign

20   these papers so you know who we are."  There was no mention

21   of INS warrant.  All they asked is what happened when I got

22   stopped in my car and tell the police what they want to hear

23   and you don't have to worry about us.

24          I never signed a statement they claim I signed.

25   Those are not my signatures.  I am willing to take a

1   polygraph test to prove my innocence if necessary or

2   evidentiary hearing.

3          And last but not least, my entire INS file was

4   issued and presented improperly.  When Dennis Forbes was

5   arrested there was no mention of an INS warrant and no

6   warrant was given to me.  Under Section 7.4 of the

7   immigration law an order of arrest must be accompanied with

8   the order to show cause required to be served and filed with

9   the immigration court.

10          This clearly shows that -- this clearly shows that

11  the police officers and INS were acting in concert, by

12  acting in concert to charge me for the crime I'm convicted

13  on now, which is conspiracy.

14          During the trial, your Honor, before Mr. Melford

15  took the stand, my mother, who was outside because she was a

16  witness -- well, my mother -- before Mr. Melford took the

17  stand my mother, who was seated outside the courtroom, saw

18  John Brennan grab Mr. Melford by the neck, and she said she

19  heard Mr. John Brennan tell Mr. Melford he better do what

20  he's told; and I would like to make that statement for the

21  record.

22          THE COURT:  Thank you, Mr. Forbes.

23          The Court is prepared to pass sentence on you, Mr.

24  Forbes.  Before the Court does, however, I'm going to

25  reverse myself on one issue, although it's academic, and

1 that is the enhancement the Court found for perjury.

2   I had occasion to review the statement from

3 September 26th, 2001, and it's not sworn to.

4   MR. SHERMAN:  It's notarized.

5   THE COURT:  I don't know if that makes a sworn

6 statement.

7   MR. SHERMAN:  I think --

8   THE COURT:  It doesn't bear -- all it is, is

9 notarized, which means the notary is acknowledging the

10 defendant's signature.

11   MR. SHERMAN:  Your Honor, apart from that, with

12 regard to the -- two things.  With regard to the obstruction

13 enhancement, apart from perjury, making false statements to

14 the Court is also a grounds under 3C1.1 to give someone the

15 enhancement, apart from whether it's perjury or not.

16   THE COURT:  Direct my attention to that section, Mr.

17 Sherman, because I do note --

18   MR. SHERMAN:  I mean the commentary --

19   THE COURT:  Direct my attention to it, because I do

20 note that the Court was operating under the mistaken

21 impression that the statement that Mr. Forbes submitted was

22 an affidavit; and frankly, it is not sworn to.  It bears a

23 signature of a notary public, which just means that Mr.

24 Forbes did sign the statement.  So direct my attention to

25 the section you're talking about.

1          MR. SHERMAN:   This is in the application of 4F, your

2     Honor, providing materially false information to a judge or

3     magistrate, whether or not it's sworn, is a grounds for the

4     enhancement.

5          Not only are the matters that we've already

6     discussed within the scope of that provision, but I would

7     submit that Mr. Forbes just a moment ago provided this Court

8     with materially false information, because unless I misheard

9     him he just stated that the signatures that are found on

10    Government Exhibit's 3 and 3A from the trial, which I have

11    in front of me, do not bear his signature; and there's

12    certainly a basis -- and I think there was testimony about

13    it at the trial; but certainly the Court can find right now

14    that, that statement was false.

15         (There was a pause in the proceeding.)

16         THE COURT:   The Court is not going to find for an

17    enhancement.   You may be right, Mr. Sherman.   The Court, I

18    might add, is proceeding under -- at least in the

19    government's submission you refer to an affidavit given by

20    the defendant.

21         The Court is not going to apply the enhancement.

22    It's academic.   It doesn't matter; and to the extent it

23    eliminates, even arguably, an appeal issue, the Court

24    determines it's the wiser course.

25         There would never be an enhancement for perjury

1   where the clear and convincing standard applies because any

2   time the defendant purportedly submitted a false statement

3   the Court could, instead of proceeding under the clear and

4   convincing standard, could say that the defendant was

5   providing false information to the Court so the

6   preponderance of evidence standard applies.

7          You may well be right; however, the Court is not

8   sure at this point.  Since it is academic and makes no

9   difference, the Court is going to reverse itself on this

10  point; and the reason I am, so the record is clear, is the

11  Court was operating under the belief that Mr. Forbes did

12  submit a sworn statement controverting one, which the Court

13  believes was the truthful rendition, that he gave during his

14  plea colloquy.

15         However, a closer examination of what Mr. Forbes

16  submitted indicates merely that he signed it, and underneath

17  it, it bears a signature by a notary public.  There's no

18  language "sworn to."  So the Court, to that extent, is

19  reversing itself.

20         Other than that, the Court's rulings stands.

21         The Court is prepared to pass sentence on you.  In

22  that regard, Mr. Forbes, I have had the opportunity to

23  review the revised Presentence Investigation Report prepared

24  by the United States Department of Probation, along with

25  other submissions to which I've already referred.  I've

1    listened carefully to what Mr. Sherman said on behalf of the

2    government, to what Mr. Okay said on your behalf, and to

3    what you said yourself.

4         You stand before me, Mr. Forbes, I believe you are

5    now 34 years old, convicted on November 17th, 2000, after a

6    jury trial with respect to indictment 99-CR-6089, of Count 1

7    of the subject indictment; that is, the Class A felony of

8    conspiracy to distribute and possess with intent to

9    distribute marijuana and 50 grams or more of cocaine base,

10   in violation of the Title 21 of United States Code, Section

11   841(b)(1)(A) and Section 846; as well as Count 3, the

12   Class A felony of use of a minor to distribute marijuana and

13   cocaine base, in violation of the 21 United States Code

14   Section 861(a)(1).

15        Additionally, on January 24, 2001, you appeared

16   before me and plead guilty to the 99-CR-6084, charging you

17   with unlawful possession of a firearm by a convicted felon

18   in violation of 18 U.S.C., Section 922(g)(1).  You did that

19   without the benefit of a plea agreement.

20        As the record speaks very clearly, you attempted to

21   withdraw that plea; however, the Court found, based on a

22   very clear allocution, that the motion to withdraw your plea

23   was properly denied.

24        It appears from an examination of your record, Mr.

25   Forbes, that you have four prior criminal convictions.   On

 1  September 2nd, 1987, you pled guilty to attempted criminal

 2  sale of a control substance in a third degree, which is a

 3  Class C felony under New York law, and received what is

 4  referred to as shock probation; that is, a period of

 5  incarceration with five years probation to run concurrently.

 6      Then on August 7th of 1990 you pled guilty in

 7  Rochester City Court to a Class A misdemeanor of resisting

 8  arrest and were sentenced to six days in jail.

 9      THE DEFENDANT:  Excuse me, your Honor.  I wasn't

10  sentenced to jail.  I was just given community service.

11      THE COURT:  I may have misread the presentence

12  report; and the last thing I want, Mr. Forbes, is to make a

13  misstatement.

14      The presentence report does reflect the fact that

15  you got six days in jail, but to the extent that you're

16  making an objection to that, I'll allow you to make the

17  objection; and the Court will indicate to you whether you

18  got six days or not is irrelevant, and to the extent that

19  you object to that the Court will not take that into

20  consideration in sentencing.  However, it is clear that you

21  did plead guilty to resisting arrest.

22      MR. SHERMAN:  Your Honor, since we're now on this,

23  before you pronounce sentence, and just in case at some

24  point it matters, the Court will recall that the government

25  filed an 851 information prior to trial.

1        THE COURT:  I do.

2        MR. SHERMAN:  I would ask the Court at this time --

3   and I will get you a copy of it in a moment -- to proceed

4   with the procedure in Section 851 of Title 21, which has to

5   take place before the pronouncement of sentence.

6        THE COURT:  What section is it, Mr. Sherman; and

7   please give me a copy of --

8        MR. SHERMAN:  Title 21, Section 851, your Honor, and

9   specifically, Subsection (b) about affirmation or denial of

10  previous conviction.

11       THE COURT:  Let me read the Section 851 to you, for

12  the benefit of Mr. Okay and Mr. Forbes.

13       "(a), (1), No person who stands convicted of an

14  offense under this part shall be sentenced to increased

15  punishment by reason of one or more prior convictions,

16  unless before trial, or before entry of a plea of guilty,

17  the United States Attorney files an information with the

18  Court and serves a copy of such information on the person or

19  counsel for the person stating in writing the previous

20  convictions to be relied upon.  Upon a showing by the U.S.

21  Attorney that facts regarding prior convictions could not

22  with due diligence be obtained prior to trial or before

23  entry of a plea of guilty, the court may postpone the trial

24  or the taking of the plea of guilty for a reasonable period

25  for the purpose of obtaining such facts.  Clerical mistakes

1   in the information may be amended at any time prior to the

2   pronouncement of sentence.

3          "(2), an information may not be filed under this

4   section if the increased punishment which may be imposed is

5   imprisonment for a term in excess of three years unless the

6   person either waived or was afforded prosecution by

7   indictment for the offense for which such increased

8   punishment may be imposed.

9          "(b), if the United States attorney files an

10  information under this section, the Court shall after

11  conviction but before pronouncement of sentence, inquire of

12  the person with respect to whom the information was filed

13  whether he affirms or denies that he has been previously

14  convicted as alleged in the information, and shall inform

15  him that any challenge to a prior conviction which is not

16  made before sentence is imposed may not thereafter be raised

17  to attack the sentence."

18          MR. SHERMAN:  In that regard I am handing up the

19  Amended Information that was filed on November 6th, 2000, a

20  copy of which was given to Mr. Schiano.

21          (There was a pause in the proceeding.)

22          THE COURT:  What I'm doing, Mr. Okay, I was just

23  reviewing the transcript to see if in his plea of guilty

24  under oath your client acknowledged the prior felony

25  conviction as a felon in possession.

1      It appears, however, he acknowledged the reckless

2   endangerment conviction.

3      MR. SHERMAN:  I think that's correct, your Honor,

4   because it was the reckless endangerment that was set forth

5   in the 922(g) indictment.

6      To the extent that there's a question -- although I

7   think we may have discussed this before -- I do have a

8   certificate of disposition from Kings County with regard to

9   this conviction.

10      THE COURT:  Let me read you the section, Mr. Okay,

11   since I don't know if you brought your book with you.

12      It says, "Denial, written response, hearing.  If a

13   person denies any allegation of the information of prior

14   conviction, or claims that any conviction alleged is

15   invalid, he shall file a written response to the

16   information.  A copy of the response shall be served upon

17   the United States Attorney.  The Court shall hold a hearing

18   to determine any issues raised by the response which would

19   except the person from increased punishment.  The failure of

20   the United States Attorney to include in the information the

21   complete criminal record of the person or any facts in

22   addition to the convictions to be relied upon shall not

23   constitute grounds for invalidating the notice given in the

24   information required by subsection (a)(1) of this section.

25   The hearing shall be before the Court without a jury and

1   either party may introduce evidence.  Except as otherwise

2   provided in paragraph 2 of this subsection, the United

3   States Attorney shall have the burden of proof beyond a

4   reasonable doubt on any issue of fact.  At the request of

5   either party the Court shall enter findings of fact and

6   conclusions of law.

7        Subdivision (2), "A person claiming that a

8   conviction alleged and the information was obtained in

9   violation of the Constitution of the United States shall set

10   forth his claim, and a factual basis therefor, with

11   particularity in his response to the information.  The

12   person shall have the burden of proof by a preponderance of

13   the evidence on any issue of fact raised by the response.

14   Any challenge to a prior conviction not raised by response

15   to the information before an increased sentence is imposed

16   in reliance thereon shall be waived unless good cause be

17   shown for failure to make a timely challenge.

18        Subdivision (d), "If the person files no response to

19   the information, or if the Court determines after hearing

20   that the person is subject to increased punishment by reason

21   of prior convictions, the Court shall proceed to impose

22   sentence upon him as provided by this part."

23        Mr. Sherman, before we proceed, since this issue may

24   not have been anticipated by Mr. Okay, what is the effect of

25   the information?

1      MR. SHERMAN:  Well, first of all, your Honor, this

2  is in fact what enables the Court to impose a life sentence

3  in this case because it increases the penalty of the drug

4  counts, and specifically Count 1.

5      In addition, with regard to whether or not it was

6  anticipated, I would note, first of all, on the cover page

7  of the presentence report it states in bold letters, right

8  underneath the Count 1 description, that there was an

9  amended Section 851 information filed with regard to that

10  count.  That is what I handed up to the Court.

11      I would also note that paragraph 54 on page 12 of

12  the PSR describes the conviction that we're talking about;

13  and as the Court has already determined from the defense,

14  there was no objection to that being in the PSR or the

15  accuracy of it.

16      THE COURT:  I understand that.  However, I do

17  recognize that Mr. Okay came in this case late.

18      Mr. Okay, since it means -- since it's obviously

19  significant to your client, Mr. Sherman is representing that

20  he has the certificate of conviction.  It would appear from

21  my reading of the statute it would be the government's

22  burden of proof that beyond a reasonable doubt the Dennis

23  Forbes who stands before me now was in fact convicted of

24  this crime.  It would be Dennis Forbes' burden to prove any

25  constitutional challenge; for example, ineffective

1  assistance of counsel.

2          So I do want to give you a moment to talk to your

3  client, since it is significant, and to tell me what your

4  client wishes to do.

5          MR. OKAY:  All right.

6      (There was a pause in the proceeding.)

7          MR. OKAY:  Your Honor, I have made inquiry of my

8  client, and he is ready, if the Court wants, to continue.

9  He indicated he is the Dennis Forbes, and he was convicted

10  in Kings County.

11          THE COURT:  Let me explain something, Mr. Forbes, so

12  you know.  I think we may have explained this before with

13  Mr. Schiano; but I am mindful that you went through Mr.

14  Schiano, Mr. Wicks, represented yourself on a motion to

15  withdraw, and then Mr. Okay, who has been good enough to

16  accept assignment in this case.

17          If in fact you are the Dennis Forbes who was

18  convicted of this crime, it ups the ante; in other words, it

19  makes the guideline range life.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  If you were not the Dennis Forbes, but

22  for this conviction, if you weren't -- if you were not the

23  person who was convicted of this crime, then under the

24  guidelines under the law, the sentencing range I could give

25  you is --

1        Mr. Lyons, 10 to life?

2        PROBATION OFFICER LYONS:  I believe that is correct,

3  your Honor.

4        MR. SHERMAN:  Your Honor, I think the guideline is

5  not changing.  What's changing is the mandatory minimum.

6  Because of this conviction, his mandatory minimum is 20 to

7  life instead of 10; but his guideline maximum is still life.

8        THE COURT:  So what you're saying to me, Mr.

9  Sherman, is it changes the statutory minimum.

10        MR. SHERMAN:  Correct.

11        THE COURT:  Your guideline is still life.  I

12  would -- so it really in no way affects the sentence I could

13  give.

14        MR. SHERMAN:  No.  It only affects if after appeal

15  Mr. Forbes happens to be successful.  We establish that the

16  851 information was valid; and therefore, if it ever becomes

17  relevant, there was a 20-year statutory minimum.

18        THE COURT:  Do you understand that, Mr. Forbes?

19        MR. OKAY:  Your Honor, if I can take a minute I can

20  explain it to him.  If we could go back here and sit down?

21        THE COURT:  Absolutely, Mr. Okay.

22      (There was a pause in the proceeding.)

23        THE COURT:  The Court notes that Mr. Okay has had

24  the opportunity to confer with Mr. Forbes.

25        As I indicated, Mr. Okay, while Mr. Sherman is

1    correct, notice was given on the presentence report as to

2    the filing of the information, I am mindful that you stepped

3    in at the last minute and certainly will accord you every

4    courtesy in that record if your client wants to contest that

5    issue.  Does he want to contest it?

6            MR. OKAY:  Your Honor, based on my discussion with

7    him right now, I explained to him the penalties under the

8    statute and the penalties under the guideline, how the

9    guideline calculation that we have was arrived at, a level

10   43, I believe in the Court's finding, and criminal history

11   category of III.  This conviction in '87 is too old to

12   affect his criminal history category.  It's not going to

13   affect that.

14           The only question is if he is the same Dennis Forbes

15   and if the Dennis Forbes has the challenge to the plea in

16   Kings County in '87, what that does is up the mandatory

17   minimum for the sentence, that the least sentence you can

18   get under the guidelines is 20 years.  If he is not the

19   Dennis Forbes and he has a constitutional challenge, that

20   puts it at 10.  If that's based on the trial and this

21   Court's understanding of the guidelines, the guidelines

22   won't allow us to reach the minimum.  I think Mr. Forbes

23   understands this.

24           I want to point out, a lot of lawyers don't

25   understand a lot of this.  I don't want to force this on Mr.

1   Forbes now, but basically what I explained to him is it

2   doesn't make any difference.   The guideline calculations

3   don't make any different.   43 --

4          THE COURT:   Is it 43 or 45?

5          MR. SHERMAN:   I think the two points only come off

6   the drug case.

7          THE COURT:   It's 45, right.

8          MR. OKAY:   43, 45, it's still life.

9          THE COURT:   You're correct.

10          MR. OKAY:   It's an academic conversation.   And based

11   on the discussion, Mr. Forbes -- and I'll let Mr. Forbes

12   speak for himself -- he's not interested in contesting, and

13   he will admit that he is the same Dennis Forbes who was

14   convicted in Kings County in 1987.

15          THE COURT:   Is that correct, Mr. Forbes?

16          THE DEFENDANT:   Yes, your Honor.

17          THE COURT:   Are you the same Dennis Forbes who was

18   in fact convicted on or about September 2nd, 1987, in Kings

19   County Supreme Court in Kings County, New York, of the Class

20   C felony of attempted sale of a controlled substance in the

21   third degree; are you the same person?

22          THE DEFENDANT:   Can I ask you a question?

23          THE COURT:   Yes.

24          THE DEFENDANT:   Do you mean if I'm the same person

25   in the same frame of mind or --

1        THE COURT:  No, you are the same person?

2        THE DEFENDANT:  Yes.

3        THE COURT:  The Court notes it has satisfied the

4   information and we can proceed.

5        As I indicated you do have, Mr. Forbes, by my count,

6   four prior convictions.  We went through the resisting

7   arrest, the reckless endangerment first, a felony conviction

8   for which you received a sentence of 28 months to five

9   years.

10       Finally, you've been convicted -- it appears you

11  have three prior convictions.  I may have misspoken and said

12  four, but you have three prior convictions, the three I

13  recited.  So this makes the subject offense your fourth

14  criminal conviction.

15       In any event, Mr. Forbes, as you know sentencing in

16  this action is pursuant to the Sentencing Reform Act of

17  1984.  As indicated, Mr. Okay has received a copy of the

18  revised Presentence Investigation Report and reviewed it

19  with you.  Additionally, you've indicated that you've read

20  the report yourself.

21       The Court has previously ruled on the five

22  objections you made to the Presentence Investigation Report.

23  The Court otherwise adopts the statements contained in the

24  Presentence Investigation Report as its findings of fact.

25       Accordingly, the Court finds as to indictment

1  99-CR-6089, Count 1 and 3, as follows:  Your base offense

2  level is 38.  Pursuant to U.S.S.G. Section 2D1(b)(1), there

3  is a two-level increase because of your possession of a

4  handgun.  That raises your offense level to 40.

5       Pursuant to U.S.S.G. Section 3B1.1(a), there is a

6  four-level increase since you were an organizer and leader

7  who employed more than five individuals.  That raises your

8  offense level to 44.

9       There is an additional one-point enhancement because

10  you employed a minor in your crime of conviction on Count

11  No. 3 pursuant to the Guideline Section 2D1.2(a)(2), which

12  raises your total offense level on Counts 1 and 3 of

13  indictment 99-CR-6089 to 45.

14       As to the indictment to which you pled, 99-CR-6084,

15  your base offense level is 20.  There's a two-level

16  enhancement pursuant to Guideline Section 2K2.1(b)(4) since

17  the gun was stolen, which brings you to a 22.

18       There is a four-level enhancement pursuant to

19  Guideline Section 2K2.1(b)(5) since you possessed a firearm

20  during the time you were engaged in distributing cocaine,

21  which raises it to a 26.

22       Your total offense level on the second indictment is

23  26; however, Counts 1 and 3 of the first indictment are

24  grouped based on the amount of drugs involved.  The

25  guideline calculations are nine levels more serious than for

1    the plea of guilty to the felon in possession of a firearm

2    charge.   In accordance with Guideline Section 3D1.4(c), the

3    offense level for Counts 1 and 3 becomes the total offense

4    level, becomes controlling.

5            That means your total offense level is 45, your

6    criminal history category is III, based on four total

7    criminal history points.

8            So based on those calculations, Mr. Forbes, my

9    options under the guidelines are as follows:   Your

10   imprisonment range is life for all counts of both

11   indictments considered together.   You're looking at

12   supervised release on Counts 1 and 3 of Indictment 6089 of

13   at least 10 years, three years on Indictment 6084.   You are

14   not eligible for probation.   Your fine range on both

15   indictments for all counts considered together is 25,000 to

16   4 million.   There is no issue of restitution; and you must

17   pay a $100 special assessment for your conviction of each

18   felony, which totals 300.

19           So, Mr. Forbes, those are my options.

20           Mr. Forbes, on deciding on an appropriate sentence,

21   the Court has carefully considered all the facts and

22   circumstances surrounding your conviction, as well as the

23   objectives of sentencing, including punishment and

24   deterrence.

25           Mr. Forbes, I will tell you to your face, I agree

1   with Mr. Sherman's statement of your conduct.   You effected

2   a lot of lives; not only the lives of people who bought your

3   cocaine base and marijuana that you were responsible for

4   putting on the street, but also the lives of the individuals

5   that you utilized in your distribution network.

6          I went back and looked carefully at this entire

7   case, and I found correspondence that you sent to me.   And I

8   specifically noted this.   You sent me a letter that's dated

9   April 12th of 2001.

10         "Honorable Judge Siragusa:   In these documents that

11  I am sending you, two of them are my oldest daughter asking

12  you to have a heart as a just judge.

13         "There is a lot of things that are said about me to

14  you by the officers; but if you based what they say as

15  knowing me, then this means your mind is already set against

16  me and my family.

17         "I can't change the outcome of my prior conviction.

18  If I could, I would; but I'm trying to change a lot of

19  things about my life.   That's why I established a business

20  with my wife and work so my kids can see that working can

21  get you anything you want in life as well as being their

22  role model to my kids and family.

23         "I feel strongly that my conviction is based

24  entirely on my prior conviction.   That is why I'm going to

25  jail, and with the help of the officers who did everything

1   to ensure that I'm behind bars, showed that there is no

2   justice for -- I can't read the word -- maybe "African

3   people.  The officers have turned so many people against me

4   it makes sense why the case went the way it did and my

5   conviction.

6           "The other papers explain my case, the arrest

7   procedure, along with my due process and constitutional

8   violations that were the strength of my case getting

9   dismissed, which never took place.  You as the Judge, can

10  you do something about it knowing that you have the power to

11  make it right?"

12          Now, here's the letters you sent to me from your

13  daughters.  "Dear Sorrogusto, my name is Shanah Forbes, the

14  oldest daughter from my dad, Dennis Anthony Forbes.  I pray

15  every day for my dad to come home to us.  My dad loves us a

16  lot and we love him unconditional.  I miss playing with him.

17  Now that I'm getting older I need him more for everything.

18  Please help my dad so he can be with us again and we can

19  have a happy family again.  Thank you, Shanah Forbes."

20          "Dear Judge Siragusa, I love my dad.  My dad's name

21  is Dennis Anthony Forbes.  My dad takes good care of me.  We

22  go to a lot of fun places like Disney World and Six Flags,

23  etc.  I miss my dad.  He is not a bad person.  He is a very

24  good and a loving person to everyone.  Please help my dad

25  and make him come home.  We miss him a lot.  Thank you,

1  Shaquana Forbes."

2          THE COURT:  Mr. Forbes, I don't know what you mean

3  by your prior conviction led to your conviction.  It didn't.

4  I sat on the case.  The evidence of your involvement in the

5  conspiracy for which you were convicted was, frankly,

6  overwhelming.  The jury felt there was not proof -- at least

7  some of them felt there was not proof beyond a reasonable

8  doubt on the gun charge, which resulted in the hung jury.

9          I am flabbergasted that you write that you're a role

10  model for your children.  You have your children write

11  letters to me.  It's truly amazing to me, Mr. Forbes.  It

12  just puts the accent mark on something Mr. Sherman said.

13  You have no remorse for what you've done.

14          I think, what if your kids got the drugs that you

15  put on the street.  Do you think about that?  Your daughter

16  says you take her to a lot of fun places like Disney World;

17  and you know what pops into my mind?  How did you pay for

18  it?  It seems that perhaps the money you got to pay for it

19  came from your illegal means.

20          I don't have to base my sentence on that.  All I

21  have to base my sentence on is the person who appears before

22  me and who has appeared before me many times; the person who

23  used others, minors, to distribute cocaine base, crack, to

24  people on the streets, obviously with the callous disregard

25  for the effect the narcotics would have on the people who

1    use them and also on the lives of their loved ones.

2         It always amazes me, Mr. Forbes, how a person like

3    you with kids whom I assume you love -- I don't question

4    that for a moment; I believe you love your children -- how

5    you can be oblivious to the fact that the narcotics you put

6    on the street get into the hands of young people.  I can

7    only guess how you'd feel toward the person who might

8    someday put drugs in the hands of your kids.  I would assume

9    as a father you would have no patience with them and your

10   feelings might -- might and probably would -- run a lot

11   stronger.

12        But the really amazing thing is you have shown

13   absolutely no remorse -- none, zero, zilch -- for a crime

14   that is the scourge of our contemporary society.

15        Pursuant to the Sentencing Reform Act of 1984, it is

16   the judgment of this Court that you, Dennis Forbes, are

17   hereby committed to the custody of the Bureau of Prisons to

18   be imprisoned for the term of life on Counts 1 and 3 of

19   Indictment 99-CR-6089.  In addition, you are sentenced to a

20   term of 120 months on Count 1 of Indictment 99-CR-6084.  All

21   such terms of imprisonment are to be served concurrently.

22        It is further ordered that you shall pay a fine of

23   $1,000 on Count 1, $1,000 on Count 3, and $1,000 on

24   Indictment 99-CR-6084, for a total of $3,000.  Interest on

25   the fine is waived.  The fine payment shall be made from any

1    wages you may earn in prison in accordance with the Inmate

2    Financial Responsibility Program.

3           It is further ordered that you should pay to the

4    United States a special assessment of $100 on Count 1, 100

5    on Count 3, and 100 on indictment 99-6084, for a total of

6    $300.

7           Upon release from the Bureau of Prisons, if that

8    ever happens, on Count 6084, you would be placed on

9    supervised release for a period of three years.  Within 72

10   hours of your release from the Bureau of Prisons you shall

11   report in person to the probation office in the district to

12   which you are released.

13          I want to explain something.  If the conviction

14   stands up on the first indictment, that is the gun, and for

15   some reason an appellate court may reverse the drug

16   conviction, your conviction on Indictment No. 6084 will

17   still stand.  In that event, though unlikely, hopefully, as

18   it will be, you shall be placed on supervised release for

19   three years.

20          While on supervised release you shall not commit

21   another federal, state, or local crime.  You shall also

22   complied with the standard conditions that have been adopted

23   by this Court, as well as the following special conditions:

24          You shall participate in a drug and alcohol

25   treatment program under a co-payment plan, which may include

1   urine testing, as approved by the probation officer.  If

2   treatment is recommended, you are not to leave your

3   treatment unless approved by both your counselor and the

4   U.S. Probation officer.

5          You shall submit to a search of your person,

6   property, vehicle, and personal residence, or other others

7   under your control, conducted as determined by the probation

8   officer.

9          I instruct you pursuant to Rule 32(c)(5) of the

10  Federal Rules of Criminal Procedure, you are advised of your

11  right to appeal the sentence imposed as to both indictment

12  number 99-6089 and 99-6084.  If you are unable to pay the

13  cost of an appeal you may apply for leave to appeal as a

14  poor person.

15         That is the sentence of this Court.

16         Anything else, counsel?

17         MR. SHERMAN:  Your Honor, in light of we're now

18  having reached sentencing, pursuant to the representation I

19  made at the time of Mr. Forbes' plea, I will move to dismiss

20  Count 2 of 99-CR-6089, which is the 924(c) count.

21         THE COURT:  That count is dismissed.

22         MR. OKAY:  Thank you very much, Judge.

23         (The court was adjourned.)

24                       *   *   *

25

<u>CERTIFICATE OF REPORTER</u>

    I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

_____       _____
Francis J. LeoGrande                         Date
Official Court Reporter