UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

-vs-

DENNIS FORBES,

Defendant

DECISION AND ORDER

99-CR-6089 CJS
08-CV-6508 CJS

_____

APPEARANCES

For Defendant:          Dennis Forbes, *Pro se*
                        10048-055
                        USP Allenwood
                        P.O. Box 3000
                        White Deer, Pennsylvania 17887

For the United States:  Frank Sherman, A.U.S.A.
                        United States Attorney's Office
                        100 State Street, Room 620
                        Rochester, New York 14614

INTRODUCTION

Now before the Court is Dennis Forbes' ("Defendant" or "Forbes") *pro se* application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the application is denied.

BACKGROUND

The facts of this case were accurately set forth in the Government's briefs, and in other documents in the record, as follows:

On September 16, 1999, . . .  Forbes was charged in an Indictment with violations of Title 21, United States Code, Section 846 [conspiracy to distribute and possess with intent to distribute marijuana and 50 grams or more of cocaine base - Count One], and Title 18, United States Code, Section

1

924(c) [possession of a firearm in connection with a drug trafficking crime - Count Two]. On March 23, 2000, a Second Superseding Indictment was returned in that case which, with respect to Forbes, charged the same violations. Forbes was also charged in that Indictment . . . with a violation of Title 21, United States Code, Section 861 [use of a minor to commit a drug trafficking crime - Count Three].

On November 6, 2000, the trial of Forbes and co-defendant Kevin Pierre on the Second Superseding Indictment . . . began before this Court and a jury. The trial lasted until November 17, 2000, when the jury returned a verdict of guilty against Forbes on Counts One and Three and against Pierre on Counts One and Four. The jury was unable to reach a verdict on Count Two against Forbes. Petitioner was represented through his trial by Michael P. Schiano, Esquire [("Schiano")]. On June 25, 2001, this Court received and granted attorney Schiano's motion to be relieved as counsel for Forbes.

On January 15, 2002, now represented by M. Kirk Okay, Esquire [("Okay")], Forbes was sentenced . . . to concurrent terms of life imprisonment on Counts One and Three, a total fine in the amount of $2,000 ($1,000 on Count One and $1,000 on Count Three) and a total special assessment in the amount of $200. After sentence was imposed on Forbes, this Court granted the government's motion to dismiss Count Two[.]

Forbes appealed from his judgment of conviction[.]  The Second Circuit affirmed the conviction on January 29, 2004, in an opinion, published at 356 F.3d 478, and an unpublished Summary Order[.] Forbes filed a petition in the Supreme Court for a writ of certiorari, which was granted on January 24, 2005. *Forbes v. United States*, 543 U.S. 1100 (2005). The judgment of the Second Circuit was vacated by the Supreme Court and the case remanded to the Second Circuit for further consideration in light of the decision in *United States v. Booker*, 543 U.S. 220 (2005). Following the Supreme Court's decision, the Second Circuit issued its mandate on November 10, 2005, remanding the case to this Court for further proceedings in conformity with *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), and making the disposition in the opinion and order issued on January 29, 2004, fully effective except to the extent that it was inconsistent with the *Crosby* remand being ordered.

This Court, after obtaining the views of counsel and considering all of the sentencing factors listed at 18 U.S.C. § 3553(a), declined to order resentencing as to petitioner in a decision and order dated April 12, 2006. Forbes appealed from this decision[.]  The Court of Appeals again affirmed the conviction on November 1, 2007. *United States v. Forbes*, 253 Fed.Appx. 50 (2d Cir. 2007).

On March 18, 2008, Forbes filed a motion in this Court for retroactive application of the Sentencing Guidelines to his crack cocaine offense . . . pursuant to Title 18, United States Code, Section 3582(c)(2). This motion was denied by this Court on July 11, 2008. [Forbes appealed, and on August 10, 2010, the Second Circuit affirmed. *See, U.S. v. Forbes*, No. 09-1011-cr, 389 Fed.Appx. 57, 2010 WL 3125217 (2d Cir. Aug. 10, 2010)].

On November 13, 2008, Forbes filed this motion pursuant to 28 U.S.C. § 2255 seeking to have this Court vacate, set aside or correct the sentence imposed in [this case.] The Motion attacks his conviction on six grounds. The first three grounds raise allegations of ineffectiveness of counsel relating to pre-trial proceedings and the trial. The last three grounds raise allegations of ineffectiveness of counsel at sentencing and on direct appeal.

Government's Response [#197] at 1-6 (citations to exhibits omitted).   Specifically, Defendant contends the following: 1) Schiano was ineffective for failing to properly advise Defendant whether to plead guilty; 2) Schiano was ineffective for failing to seek severance from his co-defendant Pierre; 3) Schiano was ineffective because he did not interview or call as a witness Damon Shallow ("Shallow"), who allegedly would have testified at trial that drugs and a gun found at 82 Eddy Street in Rochester were not connected to Defendant; 4) Schiano was ineffective at sentencing, and Okay was ineffective on appeal, for failing to argue that the Government had not proven that the cocaine involved was crack cocaine base; 5) Schiano and Okay were ineffective for failing to challenge the Court's calculations under the advisory sentencing guidelines  based on facts that were not found by the jury at trial beyond  reasonable doubt; and 6) Schiano and Okay were ineffective for failing to challenge sentencing enhancements that constituted "double counting."

DISCUSSION

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or

> that the court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which imposed the sentence
> to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  The Court may dismiss a section 2255 petition without conducting a

hearing if the petition and the record "conclusively show" that the defendant is not entitled

to relief. 28 U.S.C. § 2255.  In other cases, "[a] district court has a wide variety of tools

available to it in developing the record during habeas proceedings." *Pham v. United States*,

317 F.3d 178,180 (2d Cir. 2003).  Specifically,

> [i]t is within the district court's discretion to determine whether a hearing is
> warranted.  Among the wealth of materials available to the district court at its
> direction are the trial record, letters, documents, exhibits, affidavits and
> written interrogatories.  After expanding the record, the district court then
> decides if an evidentiary hearing also is required.  Our precedent disapproves
> of summary dismissal of petitions where factual issues exist, but it permits a
> 'middle road' of deciding disputed facts on the basis of written submissions.

*Id*. at 184 (citations omitted); *see also, Faison v. McKinney*, No. 07 Civ. 8561(JGK), 2009

WL 4729931 at *16 (S.D.N.Y. Dec. 10, 2009) ("When a petitioner's affidavit alleging that his

defense counsel denied him his right to testify is 'self-serving and uncorroborated' and

defense counsel makes a sufficiently detailed and credible affirmation to the contrary, a

district court can deny a 28 U.S.C. § 2255 petition for habeas relief without a hearing,

because the petitioner has not shown that his counsel made a serious error under

*Strickland*'s first prong.") (citations omitted).

In the context of a claim based on alleged ineffective assistance of counsel, the

Defendant

> need establish only that he has a "plausible" claim of ineffective assistance
> of counsel, not that he will necessarily succeed on the claim.  Rule 4(b) of the
> Rules Governing § 2255 Proceedings further provides that "[i]f it plainly
> appears from the motion, any attached exhibits, and the record of prior

4

proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255.

The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: e.g., an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. The court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made.

***

Moreover, a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding.

Indeed, for this reason, we have also held that when the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner.

*Puglisi v. U.S.*, 586 F.3d 209, 213-214 (2d Cir. 2009) (citations omitted).

In the instant case, as discussed further below the Court did not conduct a full testimonial hearing, but instead supplemented the record with affidavits from Schiano and Defendant. *See, Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) ("We believe that a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs.") (citation omitted).

Defendant argues that Schiano did not adequately advise him on whether to accept the Government's plea offer of a 25-year sentence. Clearly, "[d]efense counsel have a

constitutional duty to give their clients professional advice on the crucial decision of whether

to accept a plea offer from the government." *Pham v. U.S.*,  317 F.3d  at 182 (*citing Boria*

*v. Keane*, 99 F.3d 492, 498 (2d Cir.1996); other citation omitted).  In support of his claim,

Defendant states:

> Although counsel advised [Defendant] of the government's offer, he failed to
> give [Defendant] any advice or suggestion on how to deal with the proffered
> plea bargain.  Counsel did not attempt to persuade [Defendant] that it was in
> his best interest to accept the plea bargain.  Additionally, counsel did not
> attempt  to contact [Defendant's] family to help persuade him not to pursue
> the suicidal course of going to trial.  If counsel had advised [Defendant]  that
> he was on a suicide course by taking this case to trial, [Defendant] would
> have accepted the government's proposed plea bargain.

§ 2255 Motion at 4-5.  Defendant further states:

> Counsel advised [Defendant] that he thought he could beat the case.
> Counsel was more interested in trying to win a trial than attempting to
> convince [Defendant] that it was in his best interest to take the plea bargain.
> Counsel did not go over the evidence with [Defendant] during the plea
> negotiations to point out how strong the government's case was.

Defendant's Traverse at 1-2.

On this point, the Court recalls that shortly prior to the start of his trial, Defendant

agreed to plead guilty in exchange for an offered  sentence of nineteen years.  However,

the U.S. Attorney subsequently withdrew that offer and indicated that Defendant would have

to serve 25 years.  Defendant rejected that offer, despite knowing that he faced a possible

sentence of life imprisonment if convicted.  Subsequently, Defendant was convicted at trial,

and the Court sentenced him to life in prison.

At the Court's direction, Schiano filed an affidavit responding to Defendant's

contentions, and stating:

> [D]uring the course of representation of the Defendant, we had numerous
> discussions about potential consequences of going to trial. . . . [T]here was
> a potential offer to nineteen (19) years which the Defendant agreed to accept.

> I indicated to Defendant that it would be in his best interest to take the plea with a nineteen (19) year sentence. However, the United States Attorney withdrew that offer and indicated that the Defendant would have to serve twenty-five (25) years. . . . [A]fter discussions with the Defendant, including the possibility of a life sentence, the Defendant, after careful review of the offer and against attorney advice, wanted to proceed to trial. I never advised the Defendant that I would 'beat the case.' The government then offered twenty-five (25) years. I did go over the evidence with the Defendant regarding the strength of the case. I advised the Defendant of all the consequences of going to trial and the possible sanctions. It was against my advice that he went to trial. . . . [T]he Defendant knew the risks of going to trial and knew the strengths of the government's case.

Schiano Affidavit [#205]. In reply to Schiano's affidavit, Defendant submitted an unsworn response [#207], in which he now maintains that Schiano failed to explain whether accepting the government's plea offer would have involved serving a full twenty-five years, or whether he would have served less than that due to good time credit, and that Schiano failed to seek input from Defendant's family. *See, id*. at 2 ("Petitioner's counsel did not explain whether he would have to serve 25 years or 21.3 years based on good time. Nor did counsel contact Petitioner's family to help persuade him to accept the plea bargain."). The Court observes, however, that Defendant's contention regarding the applicability of good-time credit is contradicted by the record.[1]

Based on these submissions and the entire record, the Court finds that it is not necessary to conduct a full evidentiary hearing on this point. The Court finds that Schiano's affidavit is credible, while Defendant's petition and unsworn response to Schiano's affidavit are self-serving, uncorroborated, and not credible. Defendant was aware that he faced a

---

[1]Defendant was advised on the record that the twenty-five year sentence involved in the plea offer would be reduced by good-time credit. *See*, transcript of appearance on November 3, 2000 ("THE COURT: . . . And essentially what you are being offered is 25 years in prison. That is a lot of time. You told me you are 32. By the time you would get out you would be close to what, 57? *Although, I think there is some good time credit.* MR. SHERMAN [AUSA]: *Yes, there is.* THE COURT: So let's even say you are 55 or 54. That is still a long time. On the other hand, you are hearing both sides say that if you are convicted of everything, you could be exposed to life.") (emphasis added).

possible life sentence if convicted, and he chose to reject the twenty-five year plea offer, despite having previously agreed to accept the nineteen year plea offer. Given the strength of the Government's case, which was apparent,[2] the Court has no doubt that Schiano advised Defendant to accept the twenty-five year plea offer. Defendant's claim that Schiano was ineffective for failing to advise him whether to accept the plea offer is denied.

Defendant next contends that Schiano was ineffective for failing to interview Shallow prior to trial, and for failing to call Shallow to testify at trial. Defendant maintains that Schiano's conduct was ineffective, since Shallow would have testified that Defendant was not involved with the drugs and gun found at 82 Eddy Street. Notably, though, at Shallow's sentencing for possessing a firearm found at 82 Eddy Street, he admitted under oath that he was selling drugs *for Defendant* at 82 Eddy Street at the time of his arrest. *See*, Government's Response, Ex. B. at 10.[3] Nevertheless, despite such prior sworn statement, Shallow subsequently stated, in an affidavit dated June 6, 2001:

> On Nov, 2 2000  [sic] I plead guilty for possession of firearms only in federal court, even though I was arrested with guns and drugs. But, now I am taking full responsibility for the gun and drugs I got arrested with on September 29, 1998. I was in the house on 82 Eddy Street in Rochester, New York at the

---

[2]Defendant alleges that Schiano failed to advise him of the strength of the Government's case. By implication, Defendant contends that he agreed to a nineteen-year plea offer without having been advised of the strength of the government's case. Such assertion is not plausible.

[3]Shallow, aka "Romello," was indicted, along with Defendant, Winston Banner ("Banner"), and Kevin Pierre ("Pierre"), in the Second Superceding Indictment in this case. However, four days prior to trial Shallow pled guilty  to possession of an unregistered firearm. Shallow was represented at all relevant times by Donald M. Thompson, Esq. Regarding the house on Eddy Street, Pierre gave a statement to police, in which he admitted that he sold crack cocaine for Defendant from a drug house at 156 York Street in Rochester, and that Shallow/Romello also sold drugs for Defendant from a drug house on Eddy Street: "I know D [Defendant] had another drug house on Eddy Street in the upstairs, a dude named Romello sold from there." *See*, Transcript of proceedings on November 3, 2000. The Court ruled that Pierre's statement could be admitted at trial, with the references to Defendant redacted, and with a limiting instruction. Moreover, at Shallow's sentencing, he admitted under oath that he sold drugs for Defendant from 82 Eddy Street. *See*, Government's Response, Defendant's Sentencing Transcript, Exhibit B at 10 ("At sentencing in this matter Shallow did acknowledge that he was selling drugs for you out of 82 Eddy Street at the time of his arrest, and did so indicate under oath.").

time of the arrest.  This affidavit is written with the intentions of making sure that the gun and drugs that I obtained by my free will have no effect on any individual other than myself.  No one influenced me into possessing the drugs and the guns.  But me and no one other than myself should be punished for it.

§ 2255 Motion, Ex. B.  In light of Shallow's contrary prior sworn testimony, the Court naturally views this affidavit with suspicion, and, after due consideration,  finds that it does not warrant a hearing. *See, U.S. v. Manfredi*, 447 F.Supp. 847 (S.D.N.Y. 1978) (Weinfeld, J.) (Holding that unsupported retraction by a witness of his trial testimony should be viewed with suspicion, and is not sufficient to warrant a hearing on a § 2255 motion.).  Moreover, Shallow's affidavit fails to mention Defendant, or to indicate that Shallow would have testified favorably to Defendant at Defendant's trial.  Instead, Shallow's affidavit merely indicates that "now," he has decided to take full responsibility for the guns and drugs found at 82 Eddy Street.

Moreover, again at the Court's direction, Schiano provided an affidavit, in which he states that Shallow's attorney told him that Shallow would not testify for Defendant:

> [T]hrough conversations with Donald M. Thompson, attorney for Damon Shallow, it was indicated that Shallow was not going to offer any evidence in favor of the Defendant. . . .  [C]learly Damon Shallow was not going to be an effective witness if called for the defense and would not have been a credible witness if called for the Defendant. . . .  I did review the evidence regarding Shallow and it was in the best interest of the Defendant not to call Shallow to testify at trial.

Schiano Aff. [#205] at ¶ ¶ 6-8.  In his unsworn response, Defendant states that Schiano should have insisted upon speaking directly to Shallow, and that while Shallow may have sold drugs for him, it "was not during the time frame of the charged conspiracy in this case." Def. Stmt. [#207] at 3.

In this regard, it is clear that

> [t]he decision whether to call a particular witness at trial is a tactical decision which clearly falls within the ambit of trial strategy[,] *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987)[, and that] [s]uch tactical decisions, if made reasonably, will not form the basis of a claim of ineffective counsel. *Id.*; *United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir.1963).

*Mesterino v. U.S.*, No. 96 CIV. 2114 MJL, 90 CR. 276 MJL, 1997 WL 528047 at *5 (S.D.N.Y. Aug. 27, 1997).  Here, it was reasonable for Schiano to rely upon Thompson's statement to him that Shallow would not testify favorably for Defendant.  *See, Culbreath v. Bennett*, 2004 WL 1811394 at *14 (W.D.N.Y. Aug. 11, 2004) ("[E]ven if trial counsel could have contacted Highsmith directly, he was justified in relying on the representations of Highsmith's attorney.") (*citing Mesterino v. United States*, 1997 WL 528047 at *6).  Similarly, it was reasonable for Schiano to conclude that Shallow would not have been a credible witness in any event.  Consequently, Defendant has not shown that Schiano was ineffective with regard to Shallow.

Defendant also alleges that Schiano was ineffective for failing "to provide an adequate basis" for excluding at trial a statement that Pierre made to police, in which he admitted selling crack cocaine from 156 York Street.  Defendant contends that there was "prejudicial spillover" from the Government's case against Pierre, and specifically, from the admission of Pierre's statement.  Defendant argues that Pierre's statement,

> was highly prejudicial and denied Petitioner a fair trial.  The only evidence against [Defendant] as to whether he operated a drug house at York Street was from government witness Terrance Melford who was severely impeached.  The above statement [from Pierre] corroborated Melford's testimony.  Moreover, counsel was ineffective when he failed to provide an adequate basis for his motion to sever defendants.  Counsel failed to argue a  prejudicial spillover effect, or that  a joint trial also violated [Defendant's] Sixth Amendment right to confrontation.

§ 2255 Motion at 7.  However, this argument lacks merit.  Pierre's redacted statement did not have a prejudicial spillover effect, because it did not refer to Defendant, either directly

10

or indirectly, and because the Court gave a limiting instruction. *See, U.S. v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) ("Various remedies short of severance are available to the district court, including, *inter alia*, issuing limiting instructions to the jury, empaneling separate juries, or redacting out-of-court statements that refer to a codefendant by name."). Defendant's conclusory assertion that the introduction of Pierre's redacted statement was "highly prejudicial" and "denied him a fair trial" does not establish prejudicial spillover. Moreover, contrary to Defendant's suggestion, in addition to opposing the introduction of Pierre's statement on the grounds of prejudicial spillover, Schiano argued that the statement should be kept out pursuant to *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620 (1968),[4] since he correctly anticipated that Pierre would not testify at trial, and therefore would not be subject to cross-examination. The Court denied Schiano's application, finding that redaction of the reference to Defendant eliminated any *Bruton* issue. Def. Response, Ex. E, Transcript of Appearance on November 3, 2000, at p. 12; *see also, U.S. v. Jass*, 569 F.3d 47, 55-56 (2d Cir. 2009) (Observing that, in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702 (1987), the Supreme Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.") (citation and internal quotation marks omitted). Defendant's cryptic suggestion that Schiano "failed to provide an adequate basis for his severance motion" does not establish ineffective assistance of counsel. § 2255 Motion at

---

[4] *See, Schneble v. Florida*, 405 U.S. 427, 429-430, 92 S.Ct. 1056, 1058 (1972) ("The Court held in *Bruton* that the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, *when that confession implicated the defendant*.") (emphasis added).

9.

Defendant further contends that Schiano and Okay were ineffective for failing to argue that the Government had not proven beyond a reasonable doubt that the cocaine involved was crack cocaine, as opposed to some other type of cocaine base.  On this point, Defendant states:

> In this case, the substance was never tested further than the generic cocaine base identification.  In order to establish that the substance was 'crack,' more sophisticated testing was needed to prove that the substance was prepared or manufactured with sodium bicarbonate.  Hence the government could not carry its burden, and [Defendant's] counsel was ineffective for failing to argue at sentencing and on direct appeal that the government had failed to prove that the substance was 'crack' cocaine as defined by the guidelines and Section 841(b)(1)(A)(iii).

§ 2255 Motion at 18-19.  However, the Court disagrees, since there was ample evidence introduced that the cocaine base being sold as part of the conspiracy was crack cocaine. For example, Pierre's statement specifically indicated that he sold "crack cocaine" for two years from 156 York Street.  Additionally, Melford testified that he conspired with Defendant to sell "crack cocaine,"[5] and that he in fact sold "crack" cocaine and marijuana for Defendant at the York Street drug house.[6]  Jamal McGregor ("McGregor") also testified to selling crack cocaine as part of the conspiracy.[7]  Also, during jury instructions, the Court instructed the jury that during the trial crack cocaine had been referred to as cocaine base.[8] Consequently, counsel was not ineffective for failing to argue that Defendant should be sentenced according to the powder cocaine guidelines.  *See, U.S. v. Colon*, Nos. 09-1559-cr

---

[5]Trial Transcript, Vol. II, at 475.

[6]Trial Transcript, Vol. III, at 482, 494.

[7]Trial Transcript, McGregor Testimony [#69] at 15, 33.

[8]Trial Transcript, Vol. III at 1157.

(L), 09-2147-pr (con), 09-2188-cr (con), 2010 WL 4910134 at *2 (2d Cir. Dec. 3, 2010) (counsel not ineffective where evidence established that the cocaine base was crack cocaine) (unpublished)[9]; *see also, Mills v. U.S.*, No. 09 Civ. 4090(JSR)(MHD), 2010 WL 3825732 at *14-15 (S.D.N.Y. May 20, 2010) (counsel was not ineffective for failing to argue for a sentence based on powder cocaine, since "there was never a dispute" that the form of cocaine that Mills was charged with conspiring to distribute was 'crack'". . . . In sum, there is no question that Mills was aware that the charge against him related to the controlled substance known as 'crack' and not any other type of cocaine base. Therefore, he cannot claim that counsel was ineffective for not arguing for a reduction in sentence pursuant to Appendix C, Amendment 487 of the Guidelines."), report and recommendation adopted by 2010 WL 3825733 (S.D.N.Y. Sep. 30, 2010).

Defendant next argues that Okay was ineffective, at sentencing and on appeal, for failing to argue that the Court violated his Fifth Amendment Due Process[10] rights by basing his sentence on facts not found by the jury. On this point, Defendant argues that, "[t]he Due Process Clause is implicated whenever a judge determines a fact by a standard lower than 'beyond a reasonable doubt' if that factual finding would increase the punishment above the lawful sentence that could have been imposed absent that fact." § 2255 Motion at 25. The Government accurately summarizes Defendant's argument as follows:

---

[9]In *Colon*, the Circuit Court stated: "Ortiz contends that counsel was ineffective in failing to argue that his Sentencing Guidelines range should have been calculated by reference to powder cocaine rather than crack cocaine because "cocaine base," the drug to which he pleaded guilty, is a vague term that can reference either formulation. *See* U.S.S.G. § 2D1.1. We disagree. As the district court observed, the cocaine base at issue was identified s crack cocaine no less than nineteen times during Ortiz's plea colloquy. Thus, there was no vagueness in the crime as applied to Ortiz, and no objective unreasonableness in counsel's failure to seek a Guidelines calculation based on powder cocaine." *Id*. (citation omitted)

[10]Defendant admits that he already unsuccessfully argued this same idea as a Sixth Amendment violation as part of his direct appeal. § 2255 Motion at 23.

> [Defendant] contends that the Due Process Clause of the Fifth Amendment
> requires that a defendant be sentenced only in accordance with facts proved
> beyond a reasonable doubt.  He contends that because this Court set the
> base offense level for his drug conspiracy offense using a drug quantity level
> which the Court found by a preponderance of the evidence, and because the
> applicability of other adjustments [(leadership role, use of a minor)] under the
> Guidelines was determined using a preponderance standard, his sentence
> violated the Due Process Clause.

Govt.'s Response at 21.  However, Defendant's argument lacks merit, and his attorneys were not ineffective for failing to raise it at sentencing and on appeal.   Regarding sentencing, the Second Circuit has stated that, "after [*U.S. v.*] *Booker*, [543 U.S. 220, 125 S.Ct. 738 (2005),] [a] district courts' authority to determine sentencing factors by a preponderance of the evidence endures and does not violate the Due Process Clause of the Fifth Amendment." *U.S. v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005).  Consequently, a district court may find facts relevant to sentencing by a preponderance of the evidence, "as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum authorized by the jury verdict, or (3) a mandatory minimum sentence under § 841(b) not authorized by the verdict." *Id.* at 527 (citation omitted).

In this case,  the jury convicted Defendant of, *inter alia*, conspiring to possess with intent to distribute, and to distribute, 50 grams or more of a mixture or substance containing cocaine base, and a mixture of substance containing marijuana, for which the maximum sentence was life imprisonment. *See*, 21 U.S.C. § 841(b)(1)(A)(iii).  Moreover, although at sentencing the Court found, by a preponderance of the evidence, that the total amount of cocaine base involved was 3.5 kilograms and adjusted Defendant's offense level accordingly, the Court advised Defendant that such finding  did not increase the statutory maximum sentence authorized by the jury verdict. *See*, Government's Response [#197], Ex.

14

B., Sentencing Transcript at 7 (THE COURT: "[Y]our statutory maximum of life is not being increased by the Court's sentencing determination as to drug quantity. Rather, the jury found beyond a reasonable doubt that you conspired to possess with intent to distribute and to distribute 50 grams or more of cocaine base, which establishes the maximum sentence at life."). Therefore, Defendant suffered no Fifth Amendment Due Process violation, and counsel were not ineffective for raising such argument.

Finally, Defendant contends that Okay was ineffective at sentencing and on appeal for failing to object to the Court's application of an enhancement for "leadership role," under Sentencing Guideline § 3B1.1(a),[11] on grounds of double counting. At sentencing, the Court applied the enhancement, since it found that Defendant was the organizer of the drug conspiracy, which involved at least Defendant, Pierre, Shallow, Melford, Banner, and McGregor. Defendant argues that such enhancement amounted to "double counting," since 21 U.S.C. § 861, of which he was convicted of violating under Count Three of the Second Superceding Indictment, "already encompasses the concept of leadership." § 2255 Motion at 36. The Court disagrees. "[D]ouble counting is permissible in calculating a Guidelines sentence where . . . each of the multiple Guidelines sections applicable to a single act serves a distinct purpose or represents a discrete harm." *U.S. v. Maloney*, 406 F.3d 149, 153 (2d Cir. 2005). Here, even assuming *arguendo* that Defendant's conviction under 21 U.S.C. § 861(a)(1) and the application of USSG § 3B1.1(a) arise from the same "single act," the § 861(a)(1) conviction is applicable because Defendant used a minor, Winston Banner, to sell drugs, while the § 3B1.1(a) enhancement applies because Defendant was the leader

---

[11] § 3B1.1(a) states: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."

of a criminal activity that involved at least five participants, regardless of their age. Additionally, at least one Circuit Court of Appeals has upheld the application of § 3B1.1 enhancement to a defendant convicted under 21 U.S.C. § 861(a)(1). *See, U.S. v. Olson*, No. 06-30042, 241 Fed.Appx. 369, 2007 WL 1991131 (9th Cir. Jul. 6, 2007) (unpublished); *see also, U.S. v. Cordoba-Murgas*, 233 F.3d 704, 706-707 (2d Cir. 2000) (the Circuit Court expressed no concern over the fact that the defendant received enhancements under U.S.S.G. § § 2D1.2(a)(2) and 3B1.1(a), but vacated on other grounds).   Accordingly, the Court finds that counsel were not ineffective for failing to raise Defendant's "double counting" argument.

## CONCLUSION

For the foregoing reasons, Defendant's application under 28 U.S.C. § 2555 [#184] is denied.  The Clerk of the Court is directed to close this case.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated:       Rochester, New York
             March 23, 2011

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge